# Board of Council of City of Danville v. Vanarsdale.
## Vanarsdale v. McRoberts et al.

(Decided June 22, 1934.)

CHENAULT HUGUELY and E. V. PURYEAR for appellants.

McCANDLESS & McCANDLESS, C. E. RANKIN and HENRY JACKSON for appellees.

D. A. McCANDLESS for H. L. Vanarsdale.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming in part and reversing in part.

By the first appeal the city of Danville is seeking to reverse a $5,000 judgment recovered against it by Lottie Vanarsdale, and by the second appeal Lottie Vanarsdale is seeking to reverse a judgment entered upon a directed verdict in favor of the appellees, G. A. McRoberts and J. O. Stagg. We shall dispose of the city case first.

This is a second appeal, a former judgment for $8,000 having been reversed. See 243 Ky. 338, 48 S. W. (2d) 5, 6. The facts were stated in the former opinion, which renders it unnecessary that they be stated here, and we shall confine ourselves to a statement and discussion of the alleged difference between the facts on the two appeals.

### The Power of the Water Committee.

On the former appeal the mayor of the city testifying for it said on cross-examination:

"There is a special ordinance that gives a lot of power to the water committee. I think it was Mr. John C. Davis, J. O. Stagg and George McRoberts. It is one of the ordinances; I have forgotten the number of it. It empowers them to carry on the business of the water plant and kind of use their own judgment."

On this trial the following ordinance was read in the evidence:

"Be it ordained by the Board of Council of the town of Danville, that the present water-works Committee of the Council be continued, and they are hereby given full power and authority, subject to the Council, and to control and operate the system of Waterworks belonging to the City. They are authorized to employ all agents, servants and employees in their judgment necessary for the proper operation of said works."

There is no material difference between the mayor's testimony and the ordinance.

### Usage Regarding Donation of Water.

On the former trial the evidence regarding the donation of water is this:

"Q. But in cases where the water was desired without payment for it, the usage was to submit it to the water committee of the Board of Council, wasn't it? A. Yes. This was a gratis case, there was no charge at all made.

"Q. In all cases where the water was asked for to be used gratis, you didn't have the authority to grant it, but you referred it to the water committee, didn't you? A. Yes, I took it to my superiors for instructions on that."

The identical evidence was read on this trial, and in addition it was shown to be the custom of Danville and its water committee to give water free to public, charitable, educational, and recreational institutions, and that it gave water to the Chautauqua, to the two hospitals, to the Boyle county farmers during the great drought of 1930, and gave water to the colored people at the intersection of St. Mildred's court and Lexington avenue. While the donees of the water were more clearly indicated upon this trial than on the first, there

was no material difference between the evidence on this trial and that on the former trial on this point.

It was shown on this trial that it was the uniform policy of municipal water plants to donate water to such institutions as the one here involved. What proper place this had in this record we are unable to see.

### Meetings of the Committee.

On this trial it was shown this water committee had never held formal meetings or kept minutes of their proceedings. Practically the same was shown on the former trial as will appear from this which is copied from the former opinion:

"He consulted individually the members of the water committee, but not collectively; nor did they take any formal action on the matter. However, they did consent for the water to be furnished for the purpose indicated, free of charge, but they neither directed, nor consented to, any particular method of supplying it."

On this trial Mr. McRoberts, of the water committee, testified as follows:

"That Mr. Pollite met him on Main Street and informed him that the school wanted free water for the playground. He asked if he had seen Mr. Davis and Mr. Pollite told him that he had and that Mr. Davis said to give it to them and that he told Mr. Pollite that if Mr. Davis said so it was all right with him."

We are unable to see any substantial difference between the evidence on the two trials. Proving by Sam Smith on a second trial the same fact to which John Jones testified on the first one is not introducing different evidence; it is introducing the same old evidence through the medium of a different witness. The evidence being substantially the same as before, the court erred when it failed to direct a verdict for the defendant. Right or wrong, the first opinion is the law of the case.

Judgment reversed.

After the former appeal and the reversal of the former judgment, Mrs. Vanarsdale amended her petition and made G. A. McRoberts and J. O. Stagg, two

members of the water committee, defendants (the other member, Mr. John C. Davis, had died in the meantime.) At the conclusion of the evidence for the plaintiff, the court, upon motion of McRoberts and Stagg, directed the jury to return a verdict for them, and this Mrs. Vanarsdale contends was error.

The evidence showed very clearly that beyond consenting to the donation of the water, McRoberts and Stagg did nothing and knew nothing about the contemplated sprinkling or bathing arrangement and had nothing to do with the construction or installation of the device used, and therefore the court did not err in directing a verdict for them, and that judgment is affirmed.